## Case No. 14,890.

UNITED STATES v. CRAWFORD et al.

[1 N. Y. Leg. Obs. 388.]

Circuit Court, S. D. New York. 1843.

### CRIMINAL PRACTICE—ARREST OF JUDGMENT—SEAMEN—INDICTMENT FOR MUTINY AND REVOLT.

1. Where the crew of an American vessel sailing on a whaling voyage were convicted for endeavoring to make a mutiny and revolt, and no objection on the trial of the prisoners was made, that no proof had been adduced in support of the averment in the indictment that the Southern district of New York was the district court in which the prisoners were first brought and apprehended, *held*, that although such objection might have availed on the trial, it was too late on a motion in arrest of judgment.

2. The constitution of the United States gave congress the power to punish for misdemeanors.

3. The *character* of the vessel must be proved to be an American vessel, and the title of the ship may be proved by parol.

4. The names of the grand jurors did not appear in the indictment itself.

5. Persons who were not citizens of the United States, and had enlisted on board of an American vessel, could not be punished for disobedience of orders in the absence of a treaty with the government to which they belonged, unless such act of disobedience amount to a violation of the law of nations.

This was an indictment against [Lewis Crawford and others] certain seamen compos-

[1] [Reported by Hon. William Cranch, Chief Judge.]

ing a part of the crew of the American ship called "The Clifford Wayne," which sailed on a whaling voyage to the South Atlantic Ocean from the port of New Bedford in Massachusetts. The offence charged, was for endeavoring to make a mutiny and revolt on board of said ship on the high seas on said voyage. The vessel, after being at sea for nine months, returned to the port of New Bedford with a part of the disobedient crew, and the remainder, being the prisoners, had been taken out at Buenos Ayres, and sent home in a ship of war to the United States. The prisoners, on being arraigned, severally pleaded not guilty. Upon the trial before the learned district judge, on the evidence of the master and officers of the vessel, they were convicted.

Mr. Nash, for prisoners, now moved to arrest the judgment on the following grounds:

1. That no proof on the trial had been adduced in support of the averment in the indictment, that the Southern district of New York in the Second circuit was the district and circuit in which the defendants were first brought and apprehended; that such fact was necessary to give the court jurisdiction. The learned counsel referred to the act of congress of March 3, 1825, § 14,—Gard. Dig. p. 754 [4 Stat. 118]; and he contended that the averment of that fact ought to have been proved on the trial; U. S. v. Tillotson [Case No. 16,524]: 1 Kent, Comm. 344; Bingham v. Cabot, 3 Dall. [3 U. S.] 382; Starkie, Cr. Pl. 278, 279; 3 Starkie, Ev. 1552, note; Doug. 665; 5 E. C. L. 180; 12 East, 452; 1 Brod. & B. 538; 1 Esp. 302; 5 Wheat. [18 U. S.] 14, 15, Append.; Pet. Cond. R. 587; 1 Chit. Pl. 319, 320; Peake, 119; Gres. Eq. Ev. 172; Halst. Ev. 169; 2 Bibb, 4, 26; Starkie, Cr. Pl. p. 13, note 6; East, P. C. 469; 2 How. State Tr. 200; Cromp. Jur. Cts. 4, 61; Rosc. Cr. Ev. 84, 85.

2. That the constitution of the United States (article 9, § 8) gave congress the power to define and punish piracies and felonies committed on the high seas, and offences against the law of nations, and the old confederation gave congress the power of appointing courts for the trial of piracies and felonies committed on the high seas; but there was nothing in either of those instruments to punish misdemeanors, and the prisoners in this case having been indicted under the act of March 3d, 1835, § 2 [4 Stat. 776], were accused only of committing a misdemeanor. The indictment therefore ought to be quashed. The Exchange, 7 Cranch [11 U. S.] 116; 1 Kent, Comm. 355, 333; [U. S. v. Wiltberger] 5 Wheat. [18 U. S.] 97, 105.

3. That no proof on the trial had been adduced in support of the averment contained in the indictment, that the offence was committed on board of an American vessel. That as the United States had not jurisdiction of offences committed on board foreign ships, such averment in the indictment became necessary, and being necessary it should have been proved. U. S. v. Robins [Case No. 16,175]; 1 Chit. Pl. 320; Gres. Eq. Ev. 172; 1 Story's

Laws, 268 [1 Stat. 287]; 2 Phil. Ins. 37; Ohl v. Eagle Ins. Co. [Case No. 10,472]; Rosc. Cr. Ev. 3; Tayloe v. Riggs, 1 Pet. [26 U. S.] 596; 1 Starkie, Ev. 437; 1 Chit. Cr. Law, 566, 567; Rosc. Cr. Ev. 221; Catlett v. Pacific Ins. Co. [Case No. 2,517]; 2 Ld. Raym. 15, 35; Russ. Crimes, 14, 95.

4. That the names of the grand jurors who found the indictment did not appear in the indictment. That such omission was fatal, inasmuch as the courts of the United States in the absence of their own rules were bound by the practice of the king's bench in England. 1 Kent, Comm. 341, 342; Precedents of Indictments in the Crown Circuit Companion, 4 Dallas' Rep., title "Indictment;" [Robinson v. Campbell] 3 Wheat. [16 U. S.] 212; [Elmendorf v. Taylor] 10 Wheat. [23 U. S.] 159; Hall, P. C. 167; [Case No. 14,692a].

5. That the indictment ought to have averred, and proof ought to have been adduced on the trial in support of that averment, that the prisoners were citizens of the United States. For the want of such averment and proof, the indictment is bad; 2 Story's Laws U. S. 1302 [4 Stat. 809]; Rosc. Cr. Ev. 23, 221, 228; [Tayloe v. Riggs] 1 Pet. [26 U. S.] 596; 1 Starkie, Ev. 437; 1 Chit. Cr. Law, 566, 567; 17 Mass. 258.

6. That the shipping articles between the master and the prisoners ought to have been introduced on the trial to show that the voyage or term of time for which the crew shipped had not expired at the time of the alleged mutiny. Gord. Dig. arts. 14, 70; [U. S. v. Gooding] 12 Wheat. [25 U. S.] 471; Rosc. Cr. Ev. 2, 3, 228; 15 East, 244; 7 Barn. & C. 625; 3 Barn. & C. 665; Rosc. Cr. Ev. 31.

7. For multifariousness in the several counts of the indictment. Cowp. 675.

The district attorney, for the United States, relied on the following points:

1. That the prisoners having been indicted and tried in the Southern district of New York, the court would presume after verdict that this district and circuit was the one in which the prisoners were first apprehended and brought.

2. That congress had passed laws repeatedly to punish misdemeanors, and he denied the right of the judges at the assizes to disregard the acts of congress.

3. That the presumption of law was that the offence was committed on board of an American vessel, and as the prisoners had not called for the proof of the character of the vessel, the court might presume that the offence was committed as charged in the indictment.

4. That the state court practice was to omit the names of the grand jurors in the indictment, that this ought to be the rule in the present case. (BY THE COURT. We do not admit that the state courts' practice is to govern where it conflicts with the practice of the court of king's bench in England.)

See Rule 7, Sup. Ct. U. S.

5th. That it was not necessary that the prisoners should have been citizens of the United States, inasmuch as had they enlisted on board of an American vessel they would be bound by the laws of the United States.

6th. That inasmuch as the prisoners had not set up in their defence, that the voyage was not ended, the court would presume that the prisoners were not entitled to their discharge.

7th. That the several counts were not multifarious.

Before THOMPSON, Circuit Justice, and BETTS, District Judge.

THOMPSON, Circuit Justice. This is a case involving many serious and important questions. It appears that the prisoners, after having cruised for whales in the Southern Atlantic Ocean for several months and taken little or nothing, a large part of them became dissatisfied, and alleged that they had shipped for only one season, and refused to go into the high southern latitudes and Indian Ocean for whales, inasmuch as they did not know where the voyage might end; that the master found them disobedient, unwilling to proceed further; and that after the crew had refused to continue the voyage, he put back to Buenos Ayres, where the prisoners were taken out of the vessel. The master then, after sending home the prisoners to New York in an American ship of war, proceeded to return to New Bedford, where the crew were re-shipped and others substituted in the stead of those who refused to do duty.

As to the first point we admitted the rule to be as laid down by the defendants' counsel, but inasmuch as the objection was not made at the trial, the prisoners must be deemed to have assented to the truth of the averment in the indictment, and this was all that was necessary to convict the prisoners, and the jury were therefore warranted in finding the defendants guilty.

With respect to the second point, the constitution of the United States and the articles of the confederation, both contain provisions to punish piracies and felonies committed on the high seas, and the new constitution has gone further, and added offences against the law of nations. Now we are of opinion that it was an offence against the law of nations for a crew of a vessel to disobey orders of the master, and to endeavor to commit a mutiny and revolt on board of a vessel. Although there is no express adjudication on this subject, we think that in this case the offences charged in the indictment were within the terms of the constitution. The congress of the United States on various occasions have passed laws in regard to misdemeanors, and it would be calling upon the court to say at the assizes that the acts of congress for a long series of years have been unconstitutional. It is too much to ask this court at the circuit to say that such acts have

been unconstitutional, inasmuch as the supreme court has never yet directly passed upon this question.

As to the third point, there can be no doubt that the character of the vessel must be proved to be American, and this court would not take jurisdiction of offences committed on board of foreign ships. The jury must have been satisfied on this point, or they would not have been warranted in finding a verdict against the prisoners. The vessel was proved to have cleared and sailed from an American port, to wit, New Bedford, in Massachusetts, on a whaling voyage, and to have returned there after the voyage was broken up, and the jury might reasonably infer that she was an American vessel. We have previously held that the title to a ship might be proved by parol, without production of written documents of its ownership. Whether the court was right or wrong on this point, we adhere to the decision already given until over-ruled by the supreme court of the United States.

As to the fourth point, many precedents showed that the names of the grand jurors who found the indictment appeared in the caption of it, and the case in 3 Dall. [3 U. S.] 382 [Bingham v. Cabot], appears to be an authority in favor of the defendants, but we are not satisfied that this was the settled practice in all cases in the king's bench or at the assizes in England. The state court practice in the state of New York has for a long time been different. The indictment and the caption appear to be regarded as two distinct instruments in practice. There is no doubt that on a certiorari from an inferior court to a superior one, the names of the grand jurors, as well as of all the officers of the court, and the court itself, must be sent up in the record, but we are disposed to hold that the names of the grand jurors need not appear in the indictment itself; at least, this being an unsettled question, we rule that this indictment is sufficient.

With regard to the fifth point, it is not clear that persons who were not citizens of the United States, and enlisted on board of American vessels, could not be punished for disobedience of orders or other acts of felony and piracy: If they were pirates, they could clearly be punished as such by the laws of nations, let them be citizens of what country they might. Besides, there was no proof in this case but that the whole of the defendants were not citizens of the United States. If they were, they could clearly be punished. If they were citizens of Great Britain, then the act of congress did not apply, inasmuch as we had no treaty with Great Britain, which prohibited their seamen or our seamen from being employed on board of vessels in each other's service. See Act March 3d, 1813, § 10.

With reference to the sixth point, the shipping articles were the usual instruments of contracts between the master and his crew to the voyage, and were required by the acts of congress for foreign voyages, and for voyages other than to an adjacent state. The defendants had not called for the shipping articles on the trial. The master clearly would not be authorized to force the defendants to go on a new voyage when the old one had ended, but it did not appear that the old one was finished when the revolt took place. We think the proof should have been offered by the defendants distinctly on this point, if this was the ground of their refusal to do duty. But the court had previously held that the voyage might be proved without the production of the shipping articles.

As to the last point, we do not hold the doctrine in regard to the arrest of judgment so strict as Lord Mansfield has in Horne's Case [Cowp. 672]. We look to the substantial ends of justice, and if the defendants have not been fairly prejudiced by the form of the indictment, we should hold it is not enough to arrest the judgment, if the averments against the prisoners were sufficient, although there were several serious and grave questions raised by the defendants' counsel in his argument, yet we have come to the conclusion to pass sentence upon the verdict. The prisoners were subsequently brought into court, and sentenced each to six months' imprisonment in the county gaol.